UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRENCE D. AVERY,

                Petitioner,                Case No. 2:20-cv-12339
                                                            Hon. Gershwin A. Drain

v.

CONNIE HORTON,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Larrence D. Avery is serving a lengthy prison sentence for his Wayne Circuit Court bench trial conviction of second-degree murder, MICH. COMP. LAWS § 750.317, assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during commission of a felony. MICH. COMP. LAWS § 750.227b. Avery filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction on the following grounds: (1) insufficient evidence was presented at trial to establish Petitioner's identity as the perpetrator, and (2) defense counsel was ineffective for failing to call an expert witness at trial to testify regarding Avery's cell phone records. The Court will deny the petition

because the claims are without merit. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

## I. Background

The facts surrounding Avery's convictions were summarized by the Michigan Court of Appeals:

> Avery's convictions arise from a shooting on October 12, 2016, in Detroit. At trial, Chanikwa Maddox testified that she was sitting in the driver's seat of her car and Quasshie Haten was sitting in the passenger's seat. They drank alcohol together. According to Maddox, someone opened the driver's side door, pointed a gun in her face, and said, "[W]hat the f**k." Although the person's nose and mouth was covered, Maddox, who had seen Avery two or three times before, recognized the person as Avery based on his eyes, eyebrows, and forehead. According to witnesses, Avery and Quasshie were friends, and Avery's nickname was Forman. When the gunman confronted Quasshie and Maddox, Quasshie responded by stating, "Forman, bro, what are you doing?" Maddox testified that Avery "stood there with a gun in my face like he was shocked," but then stated, "F**k it, b***h," and started shooting. Maddox was shot three times, but survived. Quasshie, however, suffered a fatal gunshot wound to his head. After the shooting, Maddox ran inside a nearby apartment building and yelled that "Forman" had just shot her and Quasshie. The principal issue at trial was Avery's identity as the gunman.

*People v. Avery*, No. 341975, 2019 Mich. App. LEXIS 1688, *1-2 (Mich. Ct. App. May 7, 2019).

The central issue presented at trial was the identity of the shooter. To establish Avery's identity, the prosecutor relied on the testimony of the surviving victim, Chanikwa Maddox, the deceased victim's identification of Avery moments

before he was shot, and to a lesser extent on Daquawon Haten, the deceased victim's brother.

Maddox testified at trial that she heard the deceased victim identify the perpetrator as "Forman," Avery's nickname, just prior to the shooting. Tr. 7/19/2017, at 19. Maddox also testified that she personally recognized Avery despite the fact he wore a mask that covered his face from the nose down. *Id*., at 19, 20. Immediately after the shooting, Maddox ran into the adjacent apartment building and yelled that "Forman" had shot her. *Id*., at 22, 49, 70.

Maddox conceded that she did not know Avery well, but she had seen him on a few prior occasions, including once at the home of the victim's mother. *Id.,* at 27, 29. Maddox testified that she was able to recognize Avery from his eyes, forehead, and hair. *Id*., at 20, 37-38. She later identified Avery when police presented her with a photo lineup a couple of days after the incident. *Id*., at 26, 28, 52, 54.

Meanwhile, Haten (who was near the scene of the shooting but did not see it) provided police with Avery's photo, and he testified that he also knew Avery by his nickname "Forman." Tr. 7/22/2017, at 34, 36. Haten later identified Avery for police as "Forman" from a photo lineup. Tr. 7/19/2017, at 64, 66, 74-75.

No witness was able to provide a motive for the shooting, and in fact, there was testimony that Avery was friends with the deceased victim. *Id.*, at 10-11, 28, 66.

Based on this evidence, the trial court found Avery guilty and sentenced him as indicated above.

Following his conviction, Petitioner pursued a direct appeal in the Michigan Court of Appeals. Petitioner's appellate counsel filed an appellate brief that raised two claims:

> I. Defendant's convictions are against the great weight of the evidence and the evidence was insufficient to convict beyond a reasonable doubt.
>
> II. A new trial is warranted because Defendant's attorney was ineffective by failing to admit exculpatory cell phone evidence.

Petitioner also filed his own supplemental pro se appellate brief that raised two additional claims, but they have not been presented in the instant habeas petition. The Michigan Court of Appeals affirmed in an unpublished opinion. *Avery*, 2019 Mich. App. LEXIS 1688, at *18. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard form order. *People v. Avery*, 939 N.W.2d 252 (Mich. 2020) (Table).

## II. Standard of Review

Title 28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must

demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

### III. Discussion

A. Sufficiency of the Evidence

Avery's first claim asserts that the great weight of the evidence undermined the trial court's guilty verdict, and that constitutionally insufficient evidence was presented at trial to sustain his convictions. The claim challenges the evidence presented to establish Avery's identity as the perpetrator of the crime.

First, with respect to the great weight of the evidence argument, the claim is not cognizable on federal habeas review. "A federal habeas court . . . has no power

5

to grant habeas relief on a claim that a state conviction is against the great weight of the evidence." *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *see also Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007) (noting that "a manifest-weight-of-the-evidence argument is a state-law argument"). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was constitutionally sufficient evidence to support the verdict. *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Turning to the constitutional challenge to the sufficiency of the evidence, the Michigan Court of Appeals rejected it on the merits:

> There was sufficient evidence to conclude that Avery was the perpetrator of these crimes. Maddox testified that on the night of the shooting, she recognized Avery as the person who opened her driver's side door and pointed a gun at her. From the passenger's seat, Quasshie, who knew Avery, spoke to the gunman, referring to him as Forman. Maddox testified that she knew that Avery's nickname was Forman, and she had seen him before. Others also testified that Avery's nickname was Forman. Although the shooter wore a mask covering the lower portion of his face, Maddox testified that she nevertheless recognized the exposed portion of his face. Immediately after the shooting, Maddox went inside the apartment building, where her boyfriend (Quasshie's brother, Daquawon Haten) was with a group of people, and reported that Forman had shot both her and Quasshie. Maddox also identified Avery as the shooter in a photographic array and at trial.
>
> Avery argues that Maddox's identification was flawed because she did not know him and she could only see the portion of his face above his mouth. "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v. Davis*, 241 Mich. App. 697, 700 (2000). Despite the mask covering the shooter's mouth and part of his nose, Maddox testified that she

was able to identify Avery based on the top of his face, including his eyes, eyebrows, and forehead. Maddox explained that even though she did not know Avery personally, she recognized him because she had seen him two or three times before. Resolving all conflicts in favor of the prosecution, the trial court could reasonably infer that Maddox identified Avery as the shooter based on her familiarity with him.

Avery notes that Maddox failed to report to the first responding officer that Forman was the shooter. But the officer testified that it was not his responsibility to investigate the crime and he did not conduct an investigation when he arrived first at the scene. Avery also claims that Maddox's identification was not based on her own observations of the shooter, but was instead influenced by Quasshie's reference to "Forman" during the shooting and Daquawon's identification of Forman as Avery in a Facebook photograph. However, both Daquawon and Maddox denied reviewing any photographs of Avery before Maddox independently identified Avery in the photographic array as the shooter. And the prosecution was not required to negate every reasonable theory of innocence. *People v. Nowack*, 462 Mich. 392, 400 (2000).

Avery argues that he had no motive to shoot Quasshie or Maddox, and cites testimony that he and Quasshie were friends. But motive is not an essential element of the charged crimes. *See People v. Unger*, 278 Mich. App. 210, 223 (2008). And despite Avery's friendship with Quasshie, the trial court could nevertheless infer some tension in their relationship from evidence of Avery's Facebook posting that he did not care about Quasshie's death.

Avery claims that there was no physical evidence, such as fingerprints or DNA, to support Maddox's identification. He also calls her explanation of the shooting into question by arguing that the recovery of shell casings from more than one gun suggested that there were multiple shooters. These were factors that affected the weight and credibility of the identification testimony and were for the trial court, as the trier of fact, to resolve. "[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *Davis*, 241 Mich. App. at 700. Maddox testified that she only saw one shooter—Avery—and he stood by her driver's side door as he shot into the car. There were multiple .380-

caliber shell casings recovered inside the car and they were fired by the same weapon. The prosecution argued that the court could infer that the .40-caliber shell casing, which was recovered outside of the car and on the passenger's side, was not related to this shooting. But even if there had been a second shooter somewhere else at the scene, a reasonable trier of fact could nevertheless credit Maddox's identification of Avery as the shooter standing next to her. Viewing the evidence as a whole and resolving all conflicts in favor of the prosecution, there was sufficient evidence to demonstrate that Avery was the perpetrator.

*Avery*, 2019 WL 2016045, at *1-2.

This decision did not unreasonably apply the clearly established constitutional standard. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted, emphasis in the original).

Sufficiency of the evidence claims raised on habeas "are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, "a reviewing court on direct appeal may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id*. (punctuation modified, citation omitted). Second, on habeas review, a

federal court may only "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . if the state court decision was objectively unreasonable." *Id*. (punctuation modified, citation omitted). As a result, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Id*. at 656.

Here, the state court noted that Avery's identity as the perpetrator was established through the testimony of the surviving victim, who testified that Avery was someone known to her and she saw enough of his face to recognize that he was the shooter. She also testified that she heard the deceased victim refer to the shooter by Avery's nickname immediately prior to being shot. At trial and on appeal Avery presented reasons why this testimony did not prove his identity beyond a reasonable doubt: he had no motive to shoot his friend, the partial mask and frantic encounter did not allow for a reliable identification, and perhaps Quasshie Haten mistakenly thought he saw Avery which effected Maddox's perception of it being Avery.

These were good arguments to present to the finder of fact at trial, but they do not speak to the constitutional sufficiency of the evidence. The trial court, sitting as trier of fact, chose to accept Mattox's identification as true, and it chose to accept the Haten's contemporaneous statement of identification before he was

shot as true. Tr. 8/4/17, at 30. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the [fact-finder], *see Herrera v. Collins*, 506 U.S. 390, 401-02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

Avery has failed to demonstrate entitlement to relief based on his first claim.

D. Ineffective Assistance of Trial Counsel

Avery's second claim asserts that his trial counsel was ineffective for failing to present expert witness testimony regarding data recovered from his cellphone. He asserts that the records show that he was not at the location of the shooting when the crime occurred. The Michigan Court of Appeals denied Avery's claim as follows:

> Avery criticizes defense counsel for not calling an expert to interpret available cell phone data and requests a remand for the opportunity to develop a factual record on this issue, but he offers no factual support for any finding that the expert could have provided favorable testimony. We will not require the trial court to conduct a hearing regarding the effectiveness of counsel without a proper offer of proof. *See* MCR 7.211(C)(1)(a) (requiring a motion to remand be supported by an affidavit or offer of proof regarding the facts to be established at a hearing).

> The available record establishes that defense counsel satisfied his duty to make a reasonable investigation into whether the phone records were exculpatory. *Grant*, 470 Mich. at 485. He requested an adjournment to hire an expert, he then hired the expert, and he obtained a report regarding the phone records. Informed by the expert's report, defense counsel decided not to offer the expert's testimony. Defense counsel's decision is presumed to be strategic. *Horn*, 279 Mich. App. at 39. Avery has failed to identify any information in the report or other evidence to establish a reasonable probability that, but for counsel's decision not to introduce the expert's testimony about the phone records, the result of the proceedings would have been different. Accordingly, Avery has failed to establish that he was denied the effective assistance of counsel.

*Avery,* 2019 WL 2016045, at *4.

This decision did not contravene any principle of clearly established Supreme Court law. In *Strickland v. Washington*, 466 U.S. 668(1984), the Supreme Court set out the familiar two-prong test for determining whether a counsel's assistance is so deficient that it requires a conviction to be set aside. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id*.at 687.

"Whether counsel's performance was 'deficient' under the first prong is determined by reference to 'an objective standard of reasonableness'—specifically,

'reasonableness under prevailing professional norms.'" *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688). The second prong of the test requires that the defendant affirmatively prove prejudice, meaning that his counsel's errors "must have 'actually had an adverse effect on [his] defense.'" *Id*. (quoting *Strickland*, 466 U.S. at 693). The standard is especially difficult to meet in a federal habeas case, where the review that applies to *Strickland* claims is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Id*. (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). For a state court's adjudication of a *Strickland* claim to be "unreasonable" under 28 U.S.C. §2254(d)(1), it "must have been 'so lacking in justification' that it amounts to 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hendrix*, 893 F.3d at 922 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The record indicates that defense counsel did, in fact, obtain an adjournment to hire an expert witness to examine Avery's cellphone data. Trial counsel reviewed the report and opted not to call the expert as a defense witness. Tr. 8/4/17, at 3-4. The defense expert's report was later made part of the record on

direct appeal. *See* Prosecutor's Brief on Appeal, Appx. 1, ECF No. 8-15, PageID.607-33.) The shooting occurred between 11:00 p.m. and 12:00 a.m. on October 12, 2016, at 1620 Gladstone, Detroit. Tr. 7/19/2017, at 30, 81. The only geographical information retrieved by the expert from Avery's phone, which was recorded when photographs were taken, indicates that Avery was about a mile from the scene of the crime at 153 W. Philadelphia Street, Detroit between 12:31-1:02 a.m. on October 13, 2017. (*Id*., PageID.608-12.) The data also indicated that about three-dozen calls were made to or from Avery's phone between 11:50 p.m. and 4:37 a.m. on the night of the shooting, but there is no associated geographical data other than the fact that Avery's phone was located in Detroit's time zone. (*Id*., PageID.615-24.)

Evidence that Avery's phone was used to take photographs about a mile from the scene of the shooting within thirty to ninety minutes of the shooting would not have benefitted the defense. The cell phone data and expert report did not provide Avery with an alibi, as defense counsel hoped it would. Because the expert's report did not uncover exculpatory evidence, defense counsel was not ineffective for failing to call the expert as a defense witness at trial. The state court reasonably rejected this claim.

Here, because Petitioner's habeas claims do not merit relief, the Court will deny his petition for a writ of habeas corpus.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). Petitioner is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claim of sufficiency of the evidence. Petitioner has failed to demonstrate no rational trier of fact would have agreed with the trial court's decision that Petitioner was the perpetrator viewing the evidence as a whole, nor has Petitioner demonstrated the Michigan Court of Appeals' decision denying Petitioner's claim on direct appeal was objectively unreasonable.

Likewise, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to relief with respect to his ineffective of counsel claim. The Michigan Court of Appeals' adjudication of Petitioner's claim was not objectively unreasonable where Petitioner cannot show

deficient performance or prejudice from counsel's decision to forego presenting expert testimony demonstrating Petitioner's proximity to the shooting shortly after it occurred. For these reasons, a certificate of appealability is denied. Petitioner is also denied permission to appeal *in forma pauperis* because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal *in forma pauperis*.

**SO ORDERED.**

Dated: June 24, 2021 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 24, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk